Argued and submitted March 8, reversed April 19, petition for review allowed
September 14, 2023 (371 Or 333)
See later issue Oregon Reports

# FRIENDS OF YAMHILL COUNTY,
*Petitioner,*

*v.*

# YAMHILL COUNTY
and Grange Hill LLC,
*Respondents.*

## Land Use Board of Appeals
2022081; A180472

529 P3d 1007

Petitioner 1000 Friends of Yamhill County seeks judicial review of an order of the Land Use Board of Appeals (LUBA) upholding Yamhill County's approval of a conditional use permit (CUP) for the applicant, Grange Hill LLC, to operate a bed and breakfast as a "home occupation" in a structure to be built on land zoned for exclusive farm use. *Held*: In reviewing LUBA's order to determine if it is "unlawful in substance," ORS 197.850(9)(a), the Court of Appeals concluded that the proposed building is not a "dwelling" under ORS chapter 215 or the Yamhill County Zoning Code and that it therefore cannot provide a location for a home occupation bed and breakfast. The court held for that reason, that LUBA's affirmance of the county's approval of the CUP is unlawful in substance.

Reversed.

Andrew Mulkey argued the cause and filed the brief for petitioner.

Elaine Albrich argued the cause for respondent Grange Hill LLC. Also on the brief were Olivier F. Jamin and Davis Wright Tremaine LLP.

No appearance for respondent Yamhill County.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Reversed.

**EGAN, J.**

Petitioner Friends of Yamhill County seeks judicial review of an order of the Land Use Board of Appeals (LUBA) upholding Yamhill County's approval of a conditional use permit (CUP) for the applicant, Grange Hill LLC, to operate a bed and breakfast as a "home occupation" in a structure to be built on land zoned for exclusive farm use. We review LUBA's order to determine if it is "unlawful in substance," ORS 197.850(9)(a), and conclude that it is. We therefore reverse the order.

The subject property is approximately 18.89 acres of high-value farmland zoned for exclusive farm use (EFU) and planted in approximately 13 acres of grapes. The disputed CUP concerns the proposed construction of a two story, 8,200 square-foot, structure on the subject property, proposed to be used as a bed and breakfast, as a "home occupation" in a permitted farm dwelling.

Land within an EFU zone "shall be used exclusively for farm use except as otherwise provided in ORS 215.213, 215.283 or 215.284." ORS 215.203(1). As a "permitted" use in an EFU zone, "[s]ubject to ORS 215.279," ORS 215.283(1)(e) allows the construction of "primary or accessory dwellings and other buildings customarily provided in conjunction with farm use[.]" ORS 215.279 in turn provides that the Land Conservation and Development Commission (LCDC) may adopt a rule that establishes a farm income standard to determine whether a dwelling is "customarily provided in conjunction with farm use on a tract[.]"

LCDC has adopted administrative rules implementing ORS 215.283, setting forth the requirements for dwellings on high-value farmland. OAR 660-033-0135.[1] Yamhill

---

[1] OAR 660-033-0135(4) provides, in part:

"On land identified as high-value farmland, a dwelling may be considered customarily provided in conjunction with farm use if:

"(a) The subject tract is currently employed for the farm use, as defined in ORS 215.203, on which the farm operator earned at least $80,000 in gross annual income from the sale of farm products in each of the last two years or three of the last five years, or in an average of three of the last five years; and

"(b) Except for seasonal farmworker housing approved prior to 2001, there is no other dwelling on lands designated for exclusive farm use

County has adopted zoning ordinances that are consistent with those rules. As relevant here, Yamhill County Zoning Ordinance (YCZO) 402.03 provides, in part:

"The following residential uses shall be permitted in the Exclusive Farm Use District[.] \* \* \*

"A. *Principal dwelling customarily provided in conjunction with farm use on high-value farmland, subject to the following \* \* \**:

"l.   The subject tract is currently employed for farm use, and produced at least $80,000 in gross annual income from the sale of farm products in each of the last two years, or three of the last five years. \* \* \*

"2.   *The dwelling will be occupied by a person or persons who produced the commodities which grossed the income in subsection (1) of this Section.*"

(Emphases added.)

YCZO 202 defines a "dwelling" as:

"A building containing one (1) dwelling unit designed and *occupied by one family only.* The term dwelling includes a manufactured dwelling *but does not include a hotel, motel,* travel trailer, boarding, lodging or rooming house, private hospital, rest home or nursing home or other accommodations used for transient occupancy."

(Emphases added.) YCZO 202 defines a "dwelling unit" as:

"One (1) room or rooms connected together, constituting an independent housekeeping establishment designed and used for occupancy by one (1) family, including dependent relatives and caretakers, and includes *permanent provisions for living, sleeping, cooking (limited to one kitchen only) and sanitation* (full bathroom)."

(Emphasis added.) YCZO 202 defines a "motel" as

"One (1) or more attached or detached buildings containing housekeeping or sleeping units *designed and used for the*

---

pursuant to ORS chapter 215 or for mixed farm/forest use pursuant to OAR 660-006-0057 owned by the farm or ranch operator or on the farm or ranch operation; and

"(c) *The dwelling will be occupied by a person or persons who produced the commodities that grossed the income in subsection (a) of this section*[.]"

(Emphasis added.)

*temporary accommodation of tourists or transients* with off-street parking space for each such unit."

(Emphasis added.)

As a conditional use on EFU land, ORS 215.283(2) provides that a county may approve a "home occupation." ORS 215.448 sets forth the standards for a "home occupation" and provides, as relevant:

"(1)(a)   It shall be operated by a resident or employee of a resident of the property on which the business is located;

"* * * * *

"(c)   *It shall be operated substantially in*:

"(A)   *The dwelling*[.]

"* * * * *

"(3)   *Nothing in this section authorizes the governing body or its designate to permit construction of any structure that would not otherwise be allowed in the zone in which the home occupation is to be established.*"

(Emphases added.)

YCZO 402.04(1) conditionally allows a "home occupation" in an EFU zone, "subject to the standards and limitations set forth in Section 1004." YCZO 1004, in turn, defines a "home occupation" as

"[a]n activity involving off-site sales, the manufacture of a product or the provision of a service carried on in compliance with Section 1004 of this ordinance by a resident of the property on which the business in located."

Similarly, YCZO 1004 states the requirements for a home occupation and, as relevant here, provides:

"A.   The home occupation will be operated by a resident of the property on which the business is located.

"* * * * *

"C.   *The home occupation will be operated substantially in the dwelling* or in other buildings normally associated with uses permitted in the zone in which the property is located. * * *

"* * * * *

"F. *A home occupation shall not be used to permit construction of any structure that would not otherwise be allowed in the zone in which the home occupation is established,* nor shall a home occupation be used as justification for a zone change."

(Emphases added.)

The YCZO allows a "bed and breakfast inn" as a home occupation. YCZO 202 defines a "bed and breakfast inn" as:

"*A single family dwelling* where lodging is offered for compensation, having no more than nine (9) sleeping rooms for the purpose. A bed and breakfast inn may offer a morning meal for overnight guests only. A bed and breakfast inn is conducted within the residence of the operator."

(Emphasis added.) YCZO 1012.01(A)(l) provides:

"A bed and breakfast inn is *a single-family dwelling* where lodging is offered for compensation, having no more than nine (9) sleeping rooms for this purpose. *Bed and breakfast operations that are undertaken from within a residence* shall be considered as home occupations, and shall comply with the standards and limitations of Section 1004. A bed and breakfast inn may offer a morning meal for overnight guests only."

(Emphases added.)

With that legal context, we turn to the facts of this case. In May 2020, BW Vineyard received county approval to construct a farm-use dwelling on the subject property and received separate approval for a CUP to operate a bed and breakfast inn as a home occupation within the dwelling. As described in the original application, the bed and breakfast inn would be a two-story single-family dwelling containing a dining area, living room, kitchen, one resident "innkeeper's suite," and nine guest bedrooms, for a total of 30 occupants, including 28 overnight guests. The building was to be built to hotel building standards. The CUP stated that it was personal to BW Vineyard and that a subsequent owner wishing to operate a bed and breakfast in the dwelling would be required to obtain land use approval to do so.

Grange Hill LLC (the applicant) acquired the property and again sought approval of a CUP to build and operate the bed and breakfast inn as previously authorized. The current drawings describe a two-story structure of 8,200 square feet that includes an "innkeeper's suite," a small (26 square foot) kitchen, a common area, a fitness room, and nine guest suites, each with a full bathroom, to accommodate paying overnight guests. The county planning director approved the applicant's home occupation CUP. On petitioner's appeal, the board of county commissioners affirmed the planning director's decision. Petitioner appealed to LUBA.

In its first assignment of error to LUBA, petitioner contended that the county's approval of the CUP violates both ORS 215.448 and YCZO 1004.01. As a "sub-assignment of error," petitioner contended that the CUP should not be approved, because the building to be constructed is not a "dwelling" permitted within an EFU zone under ORS 215.448, as it will not be "a primary dwelling in conjunction with farm use."

LUBA agreed with petitioner that, as originally approved, the building was required to be "occupied by a person or persons who produced the commodities that grossed the income" required by YCZO 402.03, *i.e.*, the farm income. But LUBA reasoned that the building's approval and the relevant statutes do not include any limitation on the size, configuration, or future occupancy or use of the building.

LUBA then proceeded to narrowly address whether the structure constituted a dwelling under ORS 215.448, for purposes of a "home occupation." LUBA rejected petitioner's contention that building construction standards applicable to the structure bear on the nature of the structure. Rather, LUBA reasoned, the nature of the structure depended on its planned use. LUBA noted our opinion in *1000 Friends of Oregon v. Clackamas County*, 320 Or App 444, 453, 514 P3d 553 (2022), in which we said:

> "[A] 'dwelling' or 'residence' requires use as a home. A home is occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way."

*Id.* at 453. LUBA reasoned that, as long as the structure could serve as a residence, it qualified as a dwelling for purposes of ORS 215.448. LUBA deferred to the county's determination that the design of the structure qualified as a dwelling, because it would provide a residence for the innkeeper and because "each bedroom of the proposed structure is accessed by a shared hallway that shares common atmosphere with the rest of the house, with common areas and living space on both floors." LUBA concluded that the county's determination that the bed and breakfast was within a "dwelling" and constituted a "home occupation" was consistent with the YCZO and with ORS chapter 215.

On judicial review, petitioner contends that ORS chapter 215 authorizes only dwellings that are connected to the farm use—*i.e.*, farm dwellings, and not hotels, and authorizes home occupations only within a farm dwelling. Petitioner argues, in essence, that the building applicant seeks to construct is not a "dwelling" within the meaning of ORS chapter 215 or the YCZO, but a motel or hotel, as demonstrated by its compliance with building code requirements for those types of structures, and that the county's approval therefore violates ORS 215.448(3) (prohibiting any structure that would not be allowed in the EFU zone). Petitioner further contends that, even assuming that the building proposed by the applicant *includes* a dwelling because it provides a residence for the innkeeper, the proposed bed and breakfast inn is not to be operated *within* the dwelling and is therefore not permitted as a "home occupation," under either ORS 215.448(1)(c)(A) (requiring that the home occupation be operated in "a dwelling"), or YCZO 1004. As reframed by the applicant, the question on judicial review is whether LUBA erred in "affirming the County's findings under ORS 215.448(3) that the subject dwelling was a 'dwelling' under ORS [chapter 215] and allowed in the Exclusive Farm Use Zone." For the reasons explained below, we agree with petitioner that the proposed building is not a dwelling under ORS chapter 215 or the YCZO and that it therefore cannot provide a location for a home occupation bed and breakfast.

We review LUBA's order for whether it is unlawful in substance, ORS 197.850(9)(a), and do not substitute our

judgment for LUBA's as to any factual issue, ORS 197.850(8). We review LUBA's construction of ORS 215, ORS 215.283 (1)(e), and ORS 215.448 for legal error, under the methodology of *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). *See 1000 Friends of Oregon v. Clackamas County*, 309 Or App 499, 504, 483 P3d 706, *rev den*, 368 Or 347 (2021) (reviewing LUBA's construction of ORS 215.448). LUBA's order is unlawful in substance if it "presents a mistaken interpretation of applicable law." *Central Oregon Landwatch v. Deschutes County*, 315 Or App 673, 501 P3d 1121 (2021) (citing *Kine v. Deschutes County*, 313 Or App 370, 496 P3d 1136, *rev den*, 369 Or 69 (2021)).

We briefly address and reject LUBA's reasoning affirming the county's conclusion that the structure is a dwelling because it is possible for it to be used as such. There are innumerable potential similarities in spaces that constitute homes and those that provide transient lodging. An inn, lodge, rooming house, boarding house, or hostel may be someone's home, or it may be dedicated solely to the lodging of the public, or something in between. The question here is not whether the proposed structure *can* be used as a dwelling or even whether it will contain someone's residence, but whether it is authorized as a dwelling under ORS chapter 215—that is, whether the proposed structure is primarily dedicated as a dwelling for the use of a farm family, or whether it is a motel, primarily dedicated to the lodging of guests or tourist. The former use is permitted under ORS chapter 215 and the YCZO; the latter is not.

Seeking the answer to that question, the parties have turned to our recent opinion in *Clackamas County*, 320 Or App at 452-53, which involved a challenge to an amendment of the Clackamas County zoning code to authorize the short-term rental use of dwelling units and guest houses for up to 30 consecutive nights throughout the county, including on farm and forest land, so as to allow lodgers seeking accommodations through web-based applications such as Airbnb, HomeAway, VRBO, VacationRentals.com, or Booking.com. The county zoning code provision defining "dwelling unit" had provided that it was a building "designed for residential occupancy by one family." The challenged amendments added:

"A dwelling unit may be occupied by one family or, except as otherwise provided in this Ordinance, may be used for residential occupancy by no more than 15 persons for a period that does not exceed 30 consecutive nights by any one person."

The challenged amendments also removed a requirement that the "[o]ccupants of the guest house and the primary dwelling shall live together as one housekeeping unit," and removed a prohibition on a guest house being a source of rental income. 320 Or App at 447.

LUBA concluded that the challenged amendments were not authorized by ORS chapter 215:

"ORS 215.283 and related statutes demonstrate that state law strictly regulates transient lodging on resource land with consideration of its effects on accepted farm and forest practices. The question is not whether the short-term rental use of dwellings is expressly prohibited on land zoned for resource uses. Instead, *the question is whether state law expressly allows the short-term rental use of dwellings on land zoned for resource uses*. The county has not demonstrated that it does."

*Id*. at 452-53 (emphasis added). The question on judicial review was whether LUBA's order was unlawful in substance in determining that the challenge zoning ordinance amendment was not consistent with state law. In addressing that question, we quoted from LUBA's order interpreting "dwelling" and "residence," as used in ORS chapter 215:

"'ORS Chapter 215 provides no generally applicable definition of "dwelling" or "residence," and we therefore look to the plain, ordinary meaning of those words. "Dwelling" means 'a building or construction used for a residence' and "residence" means "a building used as a home **:** dwelling." *Webster's Third New Int'l Dictionary* 706, 1931 (unabridged ed 2002) (boldface in original; emphases added). As the county points out, the term "dwelling," considered alone, does not necessarily require owner occupancy or occupancy of a given duration. However, the term "residence" refers to "a building used as a home," and "home" is defined not only as "a private dwelling **:** house" but also as "the house and grounds with their appurtenances habitually occupied by a family : one's principal place of residence : domicile."

*Webster's* at 1082 (boldface in original). The various terms connote a distinction between a building used as a "home" and a building used as something other than a "home," for example, a hotel.'"

*Id*. at 451. In affirming LUBA's order and rejecting the county's contention that a short-term rental is indistinguishable from the ordinary residential use of a dwelling, we stated:

"[A] 'dwelling' or 'residence' requires use as a home. A home is occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way."

*Id*. at 453. We noted that ORS 215.283(2) conditionally allows certain nonfarm uses of existing dwellings, subject to the farm impacts test in ORS 215.296, on EFU land:

"ORS 215.283(2)(u) permits '[r]oom and board arrangements for a maximum of five unrelated persons in existing residences'; ORS 215.283(2)(o) provides for '[r]esidential homes as defined in ORS 197.660, in existing dwellings'; and ORS 215.283(2)(i) authorizes 'home occupations as provided in ORS 215.448.'"

*Id*. at 457. We observed that short-term rentals, as permitted by the challenged ordinances, were different from ordinary residential uses, because they include groups of strangers who occupy a building in a transitory way—"for a period that does not exceed 30 consecutive nights," and expand "dwelling" to permit occupancy beyond that allowed by the statutory exceptions. *Id*. at 454. In affirming LUBA's order rejecting the challenged zoning code amendments and determining that the order was not unlawful in substance, we concluded:

"Having reviewed the statutory scheme as it relates to the use of resource land, we conclude that regardless of whether the question is whether the short-term rental use of dwellings is implicitly included in the allowance of 'dwellings' or 'residences' on that land or, instead, whether state law expressly allows the short-term rental use of dwellings on land zoned for resource uses, the answer is the same: It does not."

*Id*. at 459.

We adhere to our conclusion in *Clackamas County* that state law does not expressly allow the short-term rental use of dwellings on land zoned for resource uses. We adhere further to our conclusion in *Clackamas County* that

> "a 'dwelling' or 'residence' requires use as a home. A home is occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way."

*Id.* at 453. We conclude, further, for the reasons explained below, that the proposed structure is not a "dwelling" under either ORS chapter 215 or the YCZO, for which a "home occupation" can be authorized, and that, for that reason, LUBA's affirmance of the county's approval of the CUP is unlawful in substance.

As noted, ORS 215.283(1)(e) allows, "[s]ubject to ORS 215.279, primary or accessory dwellings and other buildings customarily provided in conjunction with farm use." As an initial matter, it does not appear that the proposed structure could qualify as a "primary dwelling," because the record does not indicate whether the "resident" would be the person who manages the vineyard. *See* OAR 660-033-0135(4)(c) (requiring that a dwelling on high-value farm land "be occupied by a person or persons who produced the commodities that grossed the income in subsection (a) of this section"); YCZO 402.03 (same). However, the parties do not raise that issue on judicial review, and we therefore do not address it.

As LUBA correctly stated, in reviewing the county's approval, LUBA reviews the county's interpretation of its own regulations under ORS 197.829(1) and is required to affirm that interpretation so long as it is not inconsistent with the regulation's express language, purposes, or underlying policies—that is, if it is plausible.[2] *Siporen v. City of*

---

[2] ORS 197.829 provides:

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

*Medford*, 349 Or 247, 259, 243 P3d 776 (2010). As noted, before the county and LUBA, petitioner had argued that the structure's design and planned construction pursuant to building codes for places of public accommodation show that it is intended as a motel rather than a dwelling. The county did not consider construction standards to be dispositive, and LUBA agreed with the county that that factor had no bearing: "We have not been directed to any evidence that the building code standards utilized or the number of bedrooms render the use of the building as a residence impossible." On judicial review, petitioner continues to emphasize that factor.[3] Although not dispositive, we agree with petitioner that a structure's design, including applicable building code standards, certainly is relevant to a determination of the nature of structure.

LUBA affirmed the county's finding that, despite its size, design, and planned construction standards, the proposed structure is a "dwelling," because it could serve as someone's residence, it will be the innkeeper's residence, and the guest rooms shared a hallway, a common "atmosphere," and "common areas." But, as LUBA recognized, the county's finding is based on a reading of the definition of "dwelling" in YCZO 202 that is not plausible, because a "dwelling" is "[a] building containing one (1) dwelling unit designed for and occupied by one (1) family only." *See also Clackamas County*, 320 Or App at 453 (a dwelling is a "home occupied by a group of people sharing a household—not

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements.

"(2) If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, the board may make its own determination of whether the local government decision is correct."

[3] For example, petitioner points out that the structure is designed according to the Oregon Structural Specialty Code occupancy classification Residential Group R-1, which is an occupancy classification that applies to nonresidential structures designed for transient lodging such as hotels and motels. Petitioner notes that there is a separate occupancy classification, R-3, within the Oregon Residential Specialty Code, which includes a category for a "lodging house" that can include up to five guest rooms, designed for residential group occupancy, but for which the proposed structure does not qualify because it exceeds the guest room and occupancy limitations.

by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way.") Additionally, the county's interpretation is in isolation from that same section's definition of "motel." When both definitions are considered together, it is apparent that, even if a portion of the structure could provide a residence for an innkeeper, the design features of the proposed structure as a whole are those of a motel, for transient lodging. In answering the question on judicial review as reframed by the applicant, it does not appear that the proposed structure is properly characterized as a primary or accessory dwelling customarily provided in conjunction with farm use.[4]

Although LUBA recognized that the county's finding that the structure was a dwelling was inconsistent with the requirement of YCZO 202 that a "dwelling" is designed to be occupied "by one family only," LUBA noted that the county had not considered its interpretation of "dwelling" in light of the provisions for bed and breakfast inns, YCZO 1012.01(A)(a), and LUBA therefore embarked on that consideration. *See* ORS 197.829(2) ("If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, the board may make its own determination of whether the local government decision is correct."). LUBA reasoned that the county's interpretation of "dwelling" was plausible and consistent with the zoning code as a whole when considered in light of YCZO 1012.01(A)(l), which allows a bed and breakfast inn with nine guest suites—an indication, in LUBA's view, that the county intends a dwelling to encompass a structure designed for transient lodging. As the more "particular" provision, *see* ORS 174.020(2) ("When a general provision and a particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."), LUBA reasoned, the provisions relating to bed and breakfast inns, as authorized home occupations, controlled the meaning of "dwelling." LUBA stated: "[R]eading the YCZO as a whole, the limitations in the definition of

---

[4] We recognize that only the approval of the CUP is at issue on judicial review.

'dwelling' are inconsistent with the more specific intent of the county that single-family dwelling may be used for a bed and breakfast as a home occupation."

We reject LUBA's construction of the YCZO as inconsistent with the code's text and with statutory requirements and, therefore, implausible. The statutory scheme makes clear that the *entire structure*—not merely a portion of it—must be a farm dwelling that provides a "home occupied by a group of people sharing a household—not by individuals and groups who share no social or legal relationship—on a long-term or permanent basis—not in a transitory way." *Clackamas County*, 320 Or App at 453. And, as required by ORS 215.448, a home occupation is one that is carried out in a "dwelling." YCZO 202 and YCZO 1012.01(A)(l) both describe a bed and breakfast inn as a home occupation *within a dwelling*. Thus, under both ORS 215.448 and the zoning code, the structure within which the bed and breakfast inn exists must be, first, a dwelling. LUBA reached its conclusion through inverse reasoning, concluding that the structure is a dwelling because it has a dwelling in it and because the county code allows a bed and breakfast inn that includes nine guest units within a dwelling. But because the proposed structure is not itself a "dwelling" under either ORS 215.283 or the YCZO, it also cannot provide a location for a bed and breakfast inn or a "home occupation." It is false logic to reason that, because a bed and breakfast inn with nine guest rooms is permitted within a dwelling as a home occupation under the YCZO, any structure containing such an inn must be a dwelling. Such reasoning is also contrary to ORS 215.448(3), which provides that "[n]othing in this section authorizes the governing body or its designate to permit construction of any structure that would not otherwise be allowed in the zone in which the home occupation is to be established." We therefore reverse LUBA's order as well as the county's approval of the CUP.

Reversed.